## PHELPS, DODGE & Co. vs. MURRAY.

### April Term, 1877.

MORTGAGE OF GOODS TO INCLUDE ADDITIONS TO STOCK AND RESERVING POWER OF SALE.—A mortgage, made to secure debts maturing at a future day, which conveys a stock of goods in a particular store, and any other goods which may from time to time, during the existence of the mortgage, be purchased by the grantors and put into said store to replace any part of said stock which may have been disposed of, or to increase and enlarge the stock now on hand, is void *per se.*

*R. McP. Smith,* for complainants.
*Bradford & Henderson,* for defendants.

THE CHANCELLOR :—The complainants, as judgment creditors of the defendants Murray and Regan, whose executions have been returned nothing found, seek by this bill to reach the interest of the judgment debtors in a stock of goods in their possession at the filing of the bill, but previously, and previous to the creation of the complainants' debt, conveyed by said debtors to the defendant Bradford, in trust, to secure debts owing by them to the defendants N. and G. Taylor. The conveyance includes some realty, and certain personalty, described as follows: "Our entire stock of goods, and each and every article composing the same, now in our store, Nos. 19 and 21 North College street, Nashville, and any other goods which may from time to time, during the existence of this mortgage, be purchased by the grantors and put into said store to replace any part of said stock which may have been disposed of, or to increase and enlarge the stock now on hand." The debts secured were

evidenced by notes having several months to run before maturity, and the condition of the deed was that the trust should be void if the notes were paid as they became due, but otherwise the trustee might enter and sell. There were covenants by the grantors to keep up the stock to its condition at the date of the conveyance, and to apply " the profits arising from the sale " of the stock to the payment of the notes as they fell due. The bill insists that the deed is void on its face to the extent of the personalty included therein, and the demurrer squarely presents this question for decision.

The mortgage does fairly imply that the mortgagor is to remain in possession of the goods and sell them in the ordinary course of business, and does undertake to include goods to be thereafter acquired and brought into the stock. Two of the vexed questions of modern law are directly raised by the facts. There is a class of cases in which the reservation of a power of disposition by the mortgagor of property mortgaged, and the shaping of the mortgage so as to include after-acquired property, have been uniformly recognized as not inconsistent with the validity of the deed. There is another class of cases in which precisely the same provisions, in substance, have been held by some courts fatal to the conveyance, while other courts have been unable to see why any distinction should be made between the two classes. The difficulty lies exactly at this point, and the solution must depend on our being able to find some well-grounded legal principle which will reconcile the seeming conflict.

To constitute a valid sale at law, the vendor must have a present property, either actual or potential, in the thing sold. Co. Lit. 265, *a; Granthan* v. *Hawley*, Hob. 132; *Robinson* v. *Macdonell*, 5 M. & S. 228. It was long in doubt how far equity would go in recognizing such contracts. In *Bucknall* v. *Roiston*, Pr. Ch. 288, the supercargo of a ship, which was to go on a voyage to the East Indies, having shipped on board several goods and

commodities, borrowed money of the plaintiff, and made him a bill of sale of the goods, "and of the produce and advantage that should be made thereof," in the nature of a security or pledge. The goods were sold on the voyage, and with the money others were bought, and these likewise were invested in other goods, "and so there had been several barters and exchanges of several sorts of goods." The supercargo died on his return voyage, and the defendant, his creditor, took out letters of administration on his estate, and secured possession of the goods. The plaintiff brought his bill to have an account and discovery of the goods, and satisfaction for the produce and advantage thereof. The Lord Chancellor, Lord Cowper, was of opinion that the trusts of the goods appeared upon the very face of the bill of sale, that the plaintiff was entitled to all the advantages consequential upon such trust, and might follow the goods for that purpose, so far as the produce could be traced, but no further, the residue to go in course of administration. In *Curtis* v. *Auber*, 1 J. & W. 506, Lord Eldon supported an assignment of the present and future earnings of a ship. And in *Langton* v. *Horton*, 1 Hare, 549, the mortgage of a whale ship, her tackle and appurtenances, "and all oil and head matter, and other cargo, which might be caught and brought home in the ship, on and from her then present voyage," was sustained against a judgment creditor of the mortgagor. "It is impossible to doubt," says V. C. Wigram in this case, in carefully guarded language, "for some purposes at least, that, by contract, an interest in a thing not in existence at the time of the contract may, in equity, become the property of a purchaser for value." That the law was far from settled on the subject, and the *ratio decidendi* still in doubt, will appear from the decision of Lord Campbell, as Lord Chancellor, in *Holroyd* v. *Marshall*, 2 De G. F. & J. 596. There the conveyance in mortgage was of all the machinery, implements, etc., in a schedule, with a proviso that all the machinery, implements, etc., which, during the continuance of the security, should

be fixed or placed on the premises in addition to, or substitution for, the machinery, etc., specified in the schedule, should, during the continuance of the security, be subject to the trust thereby declared. In a contest between the mortgagee and a judgment creditor of the mortgagor, Lord Campbell held that the latter had the better title to the machinery which had been added to, and substituted for, the machinery specified in the schedule. His reason was, that the mortgagee had acquired by the mortgage only an equity in the after-acquired property, which must give way to the legal right of a creditor unless perfected by possession before the levy of the execution. This decision was reversed by the House of Lords (10 H. L. Cas. 191), after two arguments, Lord Westbury, the then Lord Chancellor, delivering an opinion, the reasoning of which convinced his colleague, Lord Wensleydale, who had come to a different conclusion on the first argument, and has been deemed eminently clear and satisfactory by judges and text-writers.

"The question," he says, "may be easily decided by the application of a few elementary principles long settled in courts of equity. In equity it is not necessary for the alienation of property that there should be a formal deed of conveyance. A contract for valuable consideration, by which it is agreed to make a present transfer of property, passes at once the beneficial interest, provided the contract is one of which a court of equity will decree specific performance. In the language of Lord Hardwicke, the vendor becomes a trustee for the vendee, subject, of course, to the contract being one to be specifically performed. And this is true, not only of contracts relating to real estate, but also of contracts relating to personal property, provided the latter are such as a court of equity would direct to be specifically performed." "There can be no doubt, therefore," he concludes, "that the mortgage deed amounted to a valid assignment in equity of the machinery and chattels in existence and upon the mill at the date of the contract." "It is

alleged," he continues, " that this is not the effect of the contract, because it relates to machinery not existing at the time, but to be acquired, and fixed and placed in the mill at a future time. It is quite true that a deed which professes to convey property which is not in existence at the time of a conveyance is void at law, simply because there is nothing to convey. So, in equity, a contract which engages to transfer property not in existence cannot operate as an immediate alienation, merely because there is nothing to transfer. But if a vendor or mortgagor agrees to sell or mortgage property, real or personal, of which he is not possessed at the time, and he receives the consideration for the contract, and afterwards becomes possessed of property answering the description in the contract, there is no doubt that a court of equity would compel him to perform the contract, and that the contract would, in equity, transfer the beneficial interest to the mortgagee or purchaser immediately on the property being acquired. This, of course, assumes that the supposed contract is one of that class of which a court of equity would decree the specific performance. If it be so, then, immediately upon the acquisition of the property described, the vendor or mortgagor would hold it in trust for the purchaser or mortgagee, according to the terms of the contract; for, if a contract be in other respects good and fit to be performed, and the consideration has been received, incapacity to perform it at the time of its execution will be no answer when the means of doing so are afterwards obtained."

In this case attention was called by Lord Chelmsford to the fact that, although at law an assignment of a thing which has no existence, actual or potential, at the time of the execution of the deed, is altogether void, yet, where future property is assigned, and, after it comes into existence, possession is either delivered by the assignor or is allowed by him to be taken by the assignee, in either case there would be the *novus actus interveniens* of the maxim of

Lord Bacon, and the property would pass. *Congreve* v.
*Evetts*, 10 Exch. 298; *Hope* v. *Hayley*, 5 Ell. & Bl. 830,
845; *Head* v. *Goodwin*, 37 Me. 182.

The two points prominently brought out in this case with
marked precision, and upon which the decision is made to
rest, are that the conveyance of property not in existence,
upon a valuable consideration, will be good, even at law, if
the property be actually taken possession of by the con-
veyee under the contract before the right of third persons
attach; and that such a conveyance will be good in equity
without such previous possession, *provided the contract is
one of that class of which a court of equity would decree the
specific performance.* A contract relating to realty was
always enforceable in equity, and, therefore, a conveyance of
realty, not the present property of the vendor, is good in
equity. *Blackmore* v. *Shelby*, 8 Humph. 439. It is by
reason of overlooking these distinctions that the decisions
have become, in the language of Mr. Justice Davis, irrecon-
cilable "by any process of reasoning, or on any principle
of law." *Robinson* v. *Elliott*, 22 Wall. 523.

The leading American decision on these questions is that
of Mr. Justice Story, in *Mitchell* v. *Winslow*, 2 Story, 630.
That eminent judge, with his wonted boldness and wealth
of learning, applied the doctrine subsequently enunciated
in *Holroyd* v. *Marshall* to a nearly similar case, the mort-
gage, however, reserving to the mortgagors until default,
not merely the power to use, but the power "to dispose
of" the property mortgaged. The assignment could, he
conceded, have no positive operation to transfer, *in
præsenti*, property in things not *in esse;* but, he added, "it
operates by way of present contract, to take effect and
attach to the things assigned, when and as soon as they come
*in esse;* and it may be expressed as such a contract *in rem*, in
equity." And he cites the decision of Lord Hardwicke, in
*Wright* v. *Wright*, 1 Ves. 411, probably the same alluded
to by Lord Westbury, as expressly recognizing the doctrine.
That great Chancellor there held that an assignment of a

contingent interest or possibility of an inheritance was equally allowable with an assignment of a possibility of a personal thing or chattel real, and added : "An assignment always operates by way of agreement or contract, amounting, in the consideration of this court, to this : that one agrees with another to transfer and make good that right or interest which is made good here by way of agreement." Mr. Justice Story pushed this doctrine to the full extent in the case before him, being of opinion that the power of disposition was not against public policy where it is "positively avowed and provided for" in the face of the deed. This point of the case was rather taken for granted than considered, and is one of the gravest doubt upon the character of contract then before the court.

To sustain a conveyance of property not *in esse* there must be a valuable consideration ; and it is, therefore, doubtful whether a preëxisting debt will be sufficient. The contract must be one of which a court of equity would decree the specific performance ; or the property, when it comes into *esse*, must be taken possession of by the grantee before the adverse right attaches. The decisions which have kept these principles in view, as many of them have, are founded on the ancient landmarks, and undoubtedly sound.

Upon these principles, conveyances which simply extend the mortgage to after-acquired property, or which give a limited power of disposition of specific articles with a view to replacement by similar articles, such as the machinery and tools of a manufacturing company, or the rolling stock of a railroad, or which cover the return cargo of a ship freighted for foreign commerce, are unobjectionable. Conveyances of realty, of the produce of realty, of things of the nature of realty, or largely connected with realty, are within the rule, because enforceable in equity. Conveyances which, by reason of the importance of the subject-matter, or of the purposes of the creation or uses of the subject-matter, involve the interests of the public, fall

within the rule. The decisions are, I believe, uniform, that the mortgage of the road-bed, rolling stock, and other articles essential to the exercise of the franchises of a railroad, will be enforced in equity, although made to cover future additions and incomes to be earned, and with the reservation of a power to dispose of and replace certain articles. *Pennock* v. *Coe*, 23 How. 128 ; *Dunham* v. *Railway Co.*, 1 Wall. 254 ; *Galveston R. R.* v. *Cowdrey*, 11 Wall. 459 ; *United States* v. *New Orleans R. R.*, 12 Wall. 362 ; *Clay* v. *East T. & V. R. R. Co.*, 6 Heisk. 421. The reason is that the public interest is involved in the enforcement of such contracts. The mortgage of a canal to raise money for its completion falls within the reason. *Willink* v. *Morris Canal and Banking Co.*, 3 Green, Ch. 377. An equitable mortgage of future additions to the furniture of a large hotel, as security for rent, is within the rule. *Smithusrt* v. *Edmunds*, 1 McCart. 408. The mortgage of future crops, to secure the rent of land, is clearly good. *Butt* v. *Ellett*, 19 Wall. 544 ; *Cooper* v. *Apperson*, MS. opinion of Sup. Ct. Tenn. at Jackson.

The conflict of the authorities is over the class of cases like the one before us, where, in a purely private transaction, a mortgage lien is sought to be created on personal goods, the only profitable use of which is as articles of commerce, and an unlimited power of disposition is reserved. Such a mortgage does not create an absolute lien on any property, but, as has been said, a fluctuating lien which opens to release that which is sold, and to take in what may be newly purchased. If the conveyee obtain actual possession of the articles which at any one time fall within the description, before seizure by adverse claims, the title to these articles becomes perfect under the conveyance treated as a power. *Dalton* v. *Landahn*, 27 Mich. 529. The doubt is where there has been no *novus actus interveniens*, and the rights of the parties must turn upon the validity of the contract. It is not valid at law as to after-acquired goods ; that is clear. Is it such a contract as a court of equity will

48

enforce? In a recent and well-considered case, in the district court of the United States for the district of Massachusetts, Lowell, J., has undertaken to answer this question in the affirmative. *Brett* v. *Carter*, 3 C. L. J. 286. It will be found, however, that most of the authorities cited and relied on by him range themselves under one or the other classes of cases clearly within the decision and reasoning of *Holroyd* v. *Marshall.* No English decision has gone any further, and the weight of American authority is undoubtedly against an extension to this particular class of cases. The Supreme Court of the United States has thrown the weight of its great authority in the negative. *Robinson* v. *Elliott*, 22 Wall. 513. The leading commercial state of the Union has ranged itself on the same side. *Edgell* v. *Hart*, 9 N. Y. 213. So has the state of Massachusetts, notwithstanding the lead of its ablest judicial son. *Moody* v. *Wright*, 13 Metc. 17. So has the great western state of Ohio, in a masterly opinion. *Collins* v. *Meyers*, 16 Ohio, 547. Our own supreme court has reached the same conclusion, expressly overruling *Hickman* v. *Perrin*, 6 Coldw. 135, where the intimation was otherwise. *Tennessee National Bank* v. *Ebbert*, 2 Southern Law Rev. 175.

The reason of the decisions against the validity of such deeds does not rest, as has been thought, on a presumption of fraud, in conflict with the general rule that the question of fraud, arising out of the retention of possession by the grantor with power of disposition, is one of fact, to be determined by the circumstances of the particular case. It rests, principally, upon the ground that such a transaction, irrespective of fraud, is against public policy, throwing open too wide a door for possible fraud, and *the contract does not fall within that class of which a court of equity will decree the specific performance.* The contract is invalid at law, and not enforceable in equity. The demurrer must be overruled.