Freeman, J.,
delivered the opinion of tbe court:
The 'original bill in this case was filed October 11, 1872, to enforce the collection of a note given by tbe Memphis & Little Rock Railroad Company for $4,845.23, dated May 28, 1872, due 90 days after date, together witb an account for $934.11. I'he note, as well as account, were for articles furnished the company for tbe use of tbe road, and are admitted to be due and unpaid.
The Memphis & Little Rock Railroad Company is a corporation, operating under a charter from the State of Arkansas, the road extending from Little Rock to Hope-field, on the ban!" of the Mississippi river opposite the city of Memphis. It has, however, its offices and agencies in the city of Memphis. It has no corporate existence, however, in the State of Tennessee. It owns a leasehold of 99 years, obtained from tbe city of Memphis, in certain lands, on which it has a depot, with tracks laid for its cars, which are brought over the river by a transfer boat. The case presented in this aspect of it is of a foreign corporation having property in this state, which is sought by attach-' ment to be subjected to tbe debt of complainant in our *776 courts. Tbe original bill charges that- the railroad company had made a deed of trust, of date IVIarch 1, 1871, which was registered in Shelby county, June 20, 1872, to- defendant, Henry F. Vail, of the city of New York, purporting to convey to him said railroad and equipments in the State of Arkansas, to secure the payment of one million of dollars, second mortgage bonds of $1,000 each, with coupons attached, bearing 7 per cent, interest, payable semi-annually on first of January and July, in New York. This, trust deed is averred to be fraudulent in law, made with the intent and the effect thereof being clearly to' hinder and delay the creditors of the. corporation in collection of their debts. It is also denied that such a deed was authorized by the charter of the company and by-laws of the same. It is then insisted that, admitting the deed to be valid, it does not, and cannot embrace subsequently acquired property and earnings of the road, cars, engines and other property, so' as to avoid being made liable for complainants’ debt. The. property sought to be subjected is charged to have been so. acquired, and not covered by any previous or subsequent in-cumbrances.
As evidence sustaining the charge of fraud, it is averred that the trustee never took possession of the road, but it had remained in the hands of the employees and stockholders and the earnings of the road diverted from, and used for other purposes than those mentioned in the trust, by the consent of the trustee, as had been previously agreed •and intended.
It is then averred that Goodwin, the treasurer of the company, having an office in Memphis, has in his possession, or control, money and property belonging to said corporation, the amount not known, and also the Union &. Planter’s Bank, the officers of which are made parties to the bill. The ownership of the leasehold mentioned is averred, together with cars thereon on the Tennessee side of the river. An attachment is prayed for against the property men- *777 tionecl, and tbe same asked to be sold and proceeds applied to payment of complainant's debt, and for general relief.
We do not deem it necessary to examine all tbe questions that might be raised on this record, as to tbe powers of a railroad company in mortgaging its property, whether a special power must be so given in the charter, or is an incident to the exercise of its general powers, as a proper and usual use of its property in furthering the objects of such a company. The leading question in this case, we think, is (waiving that of fraud in law or fact for the present), whether the. deed of trust attacked, by its terms, when fairly construed, conveys, or was intended to convey the property after purchased in Tennessee? Wo think not, for the following, among other reasons:
The language conveying the property is, “the company conveys to Henry F. Vail all the lands, franchises, rolling stock, iron rails, cross ties, road bed, right of way and depots and depot buildings, as well as any other species of property owned by this company, or which it may hereafter acquire by purchase or otherwise, pertaining to the main line of said road from Memphis to Little Rock, and also to pledge net receipts of said road.”
It may be assumed that all the property pertaining to the main line,, either then held or subsequently acquired, Avas conveyed and intended to be conveyed; that the language is broad enough and does include the whole of that complicated idea knoAvn as a railroad made up and completed by road bed, iron track Avay, all usual fixtures, cars, engines, etc., but only such as to pertain to the main line from Memphis to Little Rock. That main lines is clearly designated by the charter of the company, sec. 29, which is as follows: “That said road shall commence on the west bank of the Mississippi river, opposite to the city of Memphis, running in a westerly direction, to the town of Little Rock, on Arkansas rrvei; to be located in such manner as the board of directors may deem most advisable, for the in *778 terest of tbe company.” This clearly designates wbat tbe main line of tbe road is. fixing its beginning or initial point on tbe west side of tbe river, opposite to tbe city of Memphis, its terminal point Little Nock. It would be beyond the words used, and from tbe surrounding circumstances, equally beyond the intention of the parties, to bold this language conveyed, or was intended to convey property purchased afterwards in tbe city of Memphis, or which might be acquired in said city. So far as we can see, no such acquisition was contemplated at that time. The main line of the road was clearly fixed by the charter, so that the parties to the mortgage, or trust deed, knew precisely what was thus designated, and could not misunderstand this qualification to the language of the conveyance. "While after acquired property may well be mortgaged or conveyed as a security by well settled railroad law, yet it is not necessary, in sustaining such a conveyance, to hold that a conveyance like this shall stretch beyond its chartered terminus and initial point, and over the Mississippi river, across the line of a state, in order to include property subsequently acquired, which is not, in any fair sense, property pertaining to the main line of the road.' We hold, therefore, the real property, depot and buildings, the leasehold and trackways, so far as owned by the company, and attached in this case, are not embraced in this deed, and are subject to complainants’ debt. We here add that so far as the company is concerned, it admits in its answer the ownership of the leasehold, depot and grounds, and trackways on this side of the river, which seems to have been conveyed to them by the city of Memphis, as per deed in the record.
As to transfer steamer attached, we need only say it is shown to have been the property of Mr. Greenlaw, and not of the company, therefore not subject to this arcachment.
Some cars found on this side of the river and levied on, probably acquired after the conveyance to Vail was made, *779 blit of this we have no definite evidence. Be this as it may, the question whether the ears pass under the deed, as appertaining to the main line of road, is one free from all difficulty. By a large preponderance of authority they would so pass. They make up part of the equipment of such a road, and for all practicable purposes must be held appurtenant to the same, and in this view making up one element of a conveyance of a road and appurtenances, especially so when from the conveyance it is seen such road is to be used in aid for discharging the obligation created by the mortgage, on which it has been given to secure. See Clay v. E. T. & Va. R. R. Co. et al., 6 Heis., 421; [Pennock v. Coe], 23 How. (U. S. R.), 117, 130, cases cited.
Money was attached originally in the hands of Goodwin, the treasurer of the road. This order, however, was modified at chambers by the chancellor, who construed the fiat for the attachment, as not intending to interfere with the moneys in the hands of officers of the company. "We assume, however, that the money replevied,. under the order of the chancellor, by Yail, the trustee, for which bond was given October 12, 1872, in the possession of the Union and Planter’s Bank, was the money of the company deposited in this bank by the treasurer, and that this money was the earnings of the road, and earned after the deed of trust to Yail of March, 1871. Taking this to be true, the question is, are such moneys liable to complainants’ attachment? The deed being registered before commencement of this suit, excludes complainant, unless he can reach the fund on some other ground, provided earnings are embraced in the deed and go by virtue of it.
The net receipts of thé road are pledged in this deed for payment of these second mortgage bonds. The plain meaning of the deed is, that the profits of the road, if any, after discharging .other charges upon the earnings, are to be appropriated to the payment of this debt; that is, the coupons for interest as they fall due, and ultimátely the principal. *780 Such, debts as we have indicated, are by fair implication provided for by the deed' — -that is, it is implied they shall be paid by the company, and constitute a prior charge on the fund.
Complainants’ claim is not one arising after the deed was-made, and cannot, therefore, be included in this idea of the deed. It is sought to be enforced as against the earnings of the road, on what is thought to be the decision of this court, in [Clay v. Railroad], 6 Heisk., 431, in which an attaching creditor was allowed to take the moneys earned by the road, and have them applied to the payment of his debt, on the ground that the trustee had no right to the earnings,, until they became net earnings, and only after ascertaining the net profits, that the lien of the mortgage attached. Some of the reasoning of the chief justice in that case, as well as illustrations used by him, might support this view. But the case before him did not call for an opinion as to liability of the- gross earnings of a railroad, where the net earnings were pledged to the satisfaction of debts at large of the company. In that case the deed expressly provided for paying current expenses of the road, and for the- payment of debts of the company. So that the creditor was but enforcing his right, as against the company, against a fund recognized by the company’s deed as liable to be so appropriated. In one part of the opinion, that is where he discusses this question directly, the chief justice puts it on this ground. He says, by the express terms of the deed, the company has the right, and it is their duty to meet the current expenses to pay the debts, to repair the road, and to keep it equipped,, and for these purposes they are to use the gross receipts or earnings of the road, and then adds, it is only after the net profits have been ascertained (that is, thus ascertained), that the lien of the mortgages attaches. 6 Heisk., 431. This is the sound view of that case. But here the antecedent-debts of the company are not provided for, as in the deed in that case, and by fair construction only the proper ex *781 penses of creating the profits are chargeable upon them. To say that creditors at large can intercept this fund by attachment and hold the earnings, simply because they ’attach before the balance is struck, or all charges or expenses paid, so that the net earnings have been actually ascertained, -would be to defeat all such deeds, where the company had debts outstanding before the making of the deed. The theory on which it seems to go in some cases holding this view is, that until the earnings reach the hands of the mortgagee, or trustee in a deed, the right does not pass to them, that is, they pass by delivery, not by virtue of the deed.
This is not correct in our view, as laid down in Pennock v. Coe, 23 How., p. 130. The after acquired property is conveyed by the deed. The title to it is fixed by this or not at all. It passes in cases of the kind now before us as an incident to the conveyance of the road, to be used for profit. "When the deed is registered, all parties have notice of its terms, and tire title to the profits pass by virtue of the deed as other property conveyed, to be enjoyed, however, as such profits arise and come into possession of the parties entitled. Before the balance is struck and all charges paid, so as to ascertain the net profits, the right of the trustee or mortgagee, while it is fixed, is subject to such charges, but his right cannot be defeated by a creditor at large coming in and attaching the fund before such an ascertainment, as correctly laid down by supreme court of United States in case of Pennock v. Coe, 23 How., 130. The mortgage attached to the future acquisitions as soon as acquired, or from the time they came into’ existence. The right of the mortgagee or trustee is derived from the deed and does not depend on possession.
"Without more, we hold the earnings of the road are not liable to be attached to pay a debt not created after the deed was made, as in this case, but existed before.
AVe do-not go into a discussion of the question of fraud *782 by which the deed is sought to be declared void, for several reasons. .First, we would certainly hesitate to' do so in any case when the bill does not purport to' make the holders of the bonds, the beneficiaries, parties, nor give any excuse for not doing so. We have construed the deed, and hold it did not embrace the Tennessee property, which we think we may well do, as the trustee may represent the holders so far as to litigate the question of the legal title of the property conveyed, but this is going full as far as we feel authorized to go in this direction. In addition, however, we may say on this subject we see plenty of evidence of bad management, possibly misapplication of the funds arising from these bonds, or the bonds themselves. Of this the beneficiaries, however, can only complain, as we think. AVe, see no satisfactory evidence of fraud in making the deed, especially none that is brought home to the trustee or beneficiaries holding bonds.
IFe do not deem further reference to- this question at present necessary.
The result is, a decree will be drawn, subjecting the property owned by the company, the leasehold, depot, depot buildings, and track, etc., in the city of Memphis, to payment of complainant’s debt. This property will be sold by the clerk in sixty days unless debt paid. Costs of this court, and court below, will come out of the fund, if property sold, if not, be paid by the company.