## Case No. 9,031.

### In re MANLY.

[2 Bond, 261; [1] 3 N. B. R. 291 (Quarto, 75); 2 Am. Law T. Rep. Bankr. 89.]

District Court, S. D. Ohio. April Term, 1869.

CHATTEL MORTGAGE — STOCK IN TRADE — POSSESSION BY MORTGAGOR—IDENTIFICATION—BANKRUPTCY—RIGHTS OF MORTGAGEE.

1. Where a chattel mortgage was given, to secure the payment of a promissory note, payable one day after date. and the mortgaged property, being books, stationery, etc., remains in possession of the mortgagor, who carries on his business, as a retail bookseller, as before the mortgage, selling the stock mortgaged, and replacing it by the purchase of other stock, until there can be no identification of the articles specified in the mortgage, and the mortgagee assents. for years, to this course, such mortgage, when proceedings in bankruptcy are commenced against the mortgagor, has no right. under the mortgage, to the possession of the stock in his possession at the time of the bankruptcy.

[Cited in Catlin v. Currier, Case No. 2,518; Robinson v. Elliott, 22 Wall. (89 U. S.) 526; Johnson v. Patterson, Case No. 7,403.]

2. Under the facts stated. the mortgagee has no lien on the stock. and can only share, pro rata, with other creditors, in the proceeds of the sale of the stock.

In bankruptcy.

H. C. Whitman, for petitioner.

O. H. Temple and Woodruff, Tilden & Maxwell, for creditors.

LEAVITT, District Judge. The question before the court is on a motion, by the counsel of Ellen M. Manly, for an order to the marshal to deliver to her a lot of books, stationery, etc., seized by the marshal as the property of the said Thomas M. Manly, against whom there has been an adjudication of bankruptcy, on the petition of Stanage, Saunders & Co., creditors of the said Thomas M. Manly. The property in dispute is claimed by Ellen M. Manly, the sister of the bankrupt, under a chattel mortgage given to secure a debt due her from her brother. The question to be decided on this motion is, whether this mortgage vested a title to the property. in Ellen M. Manly, or whether it was the property of the bankrupt, subject to the claim of his creditor and passed to the assignee of said Thomas M. Manly.

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

The facts necessary to notice are briefly these: The said Thomas M. Manly, under the name of Thomas M. Manly & Co., had been in business for some years, in Cincinnati, as a retail bookseller and stationer, prior to the institution of the proceedings in bankruptcy. His sister, the said Ellen M. Manly, had, from time to time, advanced money to assist her brother in his business, until October 16, 1868, when these advances amounted to $1,500, and on that day Thomas M. Manly gave his note to his sister for that sum, payable one day after date, and at the same time executed the chattel mortgage to secure the payment of the note, including all his stock in trade and the furniture and fixtures pertaining to his place of business. The mortgage was duly filed in the office of the recorder of Hamilton county, pursuant to the statute of Ohio. On February 12, 1869, the firm of Stanage, Saunders & Co. filed their petition in bankruptcy against Thomas M. Manly, praying, for the cause assigned, that a decree of bankruptcy might be entered; and such proceedings were had that a decree in bankruptcy was entered in this court, on the 19th day of February, in the year aforesaid. A warrant issued to the marshal, requiring him to take possession of the property of the bankrupt pursuant to the requirement of the statute. A restraining order, prohibiting Manly and all others from interfering with or disposing of the property, had been issued on the 15th of February, and was duly served and returned. After the commencement of the proceedings in bankruptcy, but before the service of the restraining order, and before the decree in bankruptcy—that is to say, between the 15th and 19th days of February—Ellen Manly proceeded to the store of Thomas M. Manly and demanded payment of the note for $1,500, which was refused. She then demanded possession of the goods or merchandise included in her mortgage, and goods and merchandise valued at $1,100 were delivered to her and she caused them to be removed from the store, and they were taken to, and deposited at, another place in the city. Subsequently, upon the application of the petitioning creditors, the marshal was ordered to take possession of the property thus removed, and now holds it in custody. As before stated, the object of the pending motion is, that this property may be restored to Ellen M. Manly, as the owner, under the mortgage executed on October 16, 1858.

This motion has been argued at great length by counsel, and is now submitted for the decision of the court. The only question is, whether Ellen M. Manly has the legal title to the property in controversy, under the chattel mortgage which has been referred to. No question arises as to the validity or invalidity of the sale or transfer of the property, under section 35 or any other provision of the bankrupt statute [of 1867 (14 Stat. 534)]. From the facts before the court, presented by the affidavits and other proofs, it does not appear that Thomas M. Manly was insolvent on October 16, 1868, when he executed the mortgage to his sister, or that she had reasonable cause to believe her brother was then in a state of insolvency or contemplated bankruptcy. The question, therefore, as to the validity of the chattel mortgage, and the title or claim of Ellen M. Manly to the property included in it, must depend on the general principles of law applicable to such mortgages and to the facts in connection with it. I regret that the pressure of other duties will not allow me to attempt, at length, to investigate this question and refer to and analyze the various authorities cited by counsel. I am relieved, in some measure, from the necessity of doing so by the consideration that the decision of the question, in this summary way upon the pending motion, will not be conclusive upon the parties or bar them from pursuing other proceedings to test the legal title to the property in controversy. I will state, therefore, very briefly, the conclusions which I have reached in the consideration of the question. And I may remark, in the first place, that from the facts before the court, there is no reason to doubt that at the date of the execution of the mortgage Thomas M. Manly was justly indebted to his sister, the mortgagee, in the sum named in the mortgage, and for which the note was given. The transaction may have been in good faith, as between the brother and the sister, but that consideration will not give validity to the mortgage if the after-conduct of the parties was such as that, upon principles of public policy and settled law, the rights of other creditors must be deemed paramount to the claim asserted under the mortgage.

There is no controversy as to the legal principle that any sale or conveyance of chattel property, with a provision expressed or clearly implied, that the vendee or mortgagee, as the case may be, is to continue in possession, with the right to sell or exercise other acts of ownership over it, is, prima facie, fraudulent and void, as against the creditors of the vendor or mortgagor. The doctrine in England and in this country was, until a comparatively late period, that such a sale or transfer was per se fraudulent and void. But it has been modified by the decision of the courts, so that now it is presumptive only of fraud, and such presumption may be rebutted and overcome by explanatory proof that there was neither actual nor constructive fraud in the transaction. But I am not aware that it ever has been held that where the sale or transfer has been made, without any change of possession or apparent change of ownership, and the vendor or mortgagor has held himself out to the world as the owner, and obtains credit as such owner, that any state of facts can be made out of sufficient force to repel the inference of fraud. And it seems to the court that a stronger case, warranting the legal

MANN (Case No. 9,032) [16 Fed. Cas. page 630]

presumption of fraud, could not be more clearly made out than in the case of the mortgage in question. Manly was a retail dealer in books and stationery. On October 16, 1868, he executed the mortgage to his sister. It covered his entire stock in trade, including the furniture of his store. It was given to secure the payment of a note due one day after date. He was permitted to hold the possession of the mortgaged property and carry on business precisely as before the mortgage was given; and it is proved that he not only sold articles mortgaged, but that he made purchases of additional stock. This was done, with the knowledge and consent of Miss Manly, from October until the following month of February. And it was not till after the petition in bankruptcy was filed against her brother that she made any claim to the possession of the property. When claimed, without any inventory being made, and without any effort to identify the specific articles covered by the mortgage, the books were, in a very loose and hurried manner, taken from the store of her brother and transferred to another place in the city. It is true, in reference to the mortgage, that it contained no express provision that the mortgagor should continue in possession, with the right to dispose of the mortgaged property. But the understanding and intent of the parties are to be inferred from their acts. It is in evidence that the mortgagor was permitted to retain possession. It is so set forth in the affidavit of Miss Manly; and, by the clearest implication, there was a power in the mortgagor to sell or dispose of the property. The mortgagor so understood it, and continued to make sales until the store was closed in February, 1869. As a necessary result, it was impossible that the identical property mortgaged could be restored to the mortgagee. As there was no provision in the mortgage that articles sold might be replaced by others of the same description, the identification of the mortgaged articles was an impossibility. It could not operate, therefore, as a lien on the specific property mortgaged; and, in the language of the supreme court of Ohio, in the case of Collins v. Myers, 16 Ohio, 547, could have no other effect than to "ward off creditors."

I have looked into the cases, especially the Ohio cases, which have been cited by the counsel on both sides. As I understand these cases, there is not one that sustains the principle that a chattel mortgage, with the right in the mortgagor to retain possession of the mortgaged property, and to sell or dispose of the same, is not fraudulent as to creditors. It is strenuously insisted, that under the law of Ohio requiring chattel mortgages to be filed in the office of the county recorder, when so filed there is notice to the world of the lien created on the mortgaged property, and every one deals with the mortgagor at his peril. I do not propose to make any comment upon this statute or analyze its provisions. It is most obvious that the construction insisted on by the counsel would most seriously embarrass commercial operations. If a dealer, knowing that another is carrying on his business in his own name, with every outward indication that he is the owner of the property of which he is in possession, and apparently prospering in business, is obliged to search the files of the recorder's office to ascertain if there is a mortgage on the property thus held out to the world as his own, it would be a serious drawback to all trading operations. In regard especially to dealers in distant cities or places, of whom credit was asked by an Ohio merchant, it would be exceedingly embarrassing if, before he could respond to the request for credit, he were obliged to search the files of chattel mortgages to ascertain whether he could safely give credit to the party requiring it. I can not suppose such was the intention of the law, and do not feel called on to give it a construction leading to such results. In deciding that Miss Manly has no title to the property in question, under her chattel mortgage, paramount to that of other creditors of Thomas M. Manly, I think I am fully sustained by the following authorities: Collins v. Myers, 16 Ohio, 547; Freeman v. Rawson, 5 Ohio St. 1; Harman v. Abbey, 7 Ohio St. 219.

The counsel for Miss Manly has eloquently referred to the great hardship which she will suffer if her claim to the property in question is set aside. The answer is, if she is a sufferer it is her own fault. She had a perfect right, under her mortgage, to take full possession of the mortgaged property when her brother's note, payable one day after date, became due. The note not being paid then, the forfeiture under the mortgage could have been enforced, and her debt secured. If, from a desire to aid him, or a misplaced confidence in the pecuniary ability of her brother, she permitted him to retain possession of the property, and carry on business as before, whereby honest dealers were induced to give him credit, she has no just grounds for complaint. She stands upon the same ground as other creditors of Manly, and must be content to share a pro rata dividend with them of the proceeds of his property.

Motion is therefore denied.