Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 There are few subjects which have been more discussed in the courts of this country, with less uniformity of decision, than that of sales and mortgages of personal goods, without delivery of possession. In Indiana the statute of 13th Elizabeth has been adopted, and two provisions applicable to this case engrafted on it. The first declares that “ no assignment of goods by way of mortgage- shall be valid against any other person than the parties thereto, when such goods are not delivered to the mortgagee, or assignee, and retained by him, unless such assignment or mortgage ” shall be duly recorded. And the second says, “ that the question of fraudulent intent in all cases shall be deemed a question of fact.”
 

 Prior to the incorporation of these provisions in the statute it was necessary to the validity of chattel mortgages in
 
 *521
 
 Indiana that there should be a manual delivery of the mortgaged property to the mortgagee, who should continue to hold the same in his possession. These provisions changed the law in this particular, and permitted the retention of the possession of personal property by the mortgagor in a chattel mortgage given as a security for the payment of debts. And there can be no question that in Indiana a mortgage, which simply allows the mortgagor to retain the possession and use of the property until breach of the condition is, -when duly recorded,
 
 -primd fade
 
 valid. But it is insisted that the effect of these provisions is also to make a mortgage of a stock of goods, containing a provision authorizing the mortgagor to retain possession for the purpose of selling in the usual course of trade,
 
 primd fade
 
 valid, and that the court cannot, as a matter of law, pronounce it fraudulent. This, we think, is going beyond what the legislature intended. If registration was intended, as we think it was, as a substitute for delivery of possession, it was not meant to be a protection for all the other stipulations contained in a mortgage. If so, it could be used as a cover for any fraudulent transaction, which would have to be treated, on the theory advanced, as valid, until the contrary was shown.
 

 It is true the law conferred on the parties the right to agree that the possession of the property could remain with the mortgagor, provided the mortgage be recorded; but if the mortgage contains other provisions, which, on legal principles, vitiates the whole instrument, it is difficult to see how recording it could make it even
 
 primd fade
 
 valid. The Bill of Sales Registration Act in England makes void all bills of sale not filed as required, if unaccompanied by possession. An eminent writer iu speaking of this act says: “ Of course the mere fact of due registration of a bill of sale, under this act, does not necessarily make it good against creditors. The act was not passed with a view of making good a title which was not good before, but for the protection of creditors.”
 
 *
 
 And to the same effect is
 
 Wood
 
 v.
 
 Lowry.
 

 †
 

 
 *522
 
 It is argued, however, that there can be no such thing in this class of cases as constructive fraud, because under the statute the question of fraudulent intent is one of fact. But the Supreme Court of Indiana has decided the question differently. The statute of that State for the prevention of frauds embraces twenty-two sections. The tenth relates to the registration of chattel mortgages; the seventeenth enacts that every assignment, &c., of any estate in lands, or of goods, made with intent to hinder, delay, or defraud creditors, shall be void; and the twenty-first declares that the question of fraudulent intent, in all eases arising under the provisions of this act, shall be deemed a question of fact. It will thus be seen that the last section applies to conveyances of land as well as to assignments of goods by way of mortgage. In
 
 Jenners and others
 
 v.
 
 Doe on the demise of Pomeroy and
 
 others,
 
 *
 
 the question was whether a deed of trust on certain lands was void as to creditoi’s who did not consent to it. The court of original jurisdiction held the deed void upon its face as a question of law. It was contended that this ruling was erroneous, and that in all cases the instrument must be referred to the jury in connection with the facts. But the Supreme Court held the ruling to be correct. They say that the provisions embraced in the seventeenth and twenty-first sections of the statute have declared, not changed, the law on the subject; that the court must, in the first instance, determine upon the legal effect of a written instrument, and if that be to delay creditors it is rejected. If, however, on its face it conforms to the law, it is received in evidence, and the question of the intent with which it was executed is an open one for the jury. It would seem to be the view of the court in this case, as well as in the preceding one in the same volume, of
 
 Nutter
 
 v.
 
 Harris,
 
 that the twenty-first section applies to eases of actual or meditated and intentional fraud, and is not applicable to written instruments which the law adjudges to be fraudulent on their face and consequently void.
 

 There is, therefore, nothing in the way'of the considera
 
 *523
 
 tiou of the main question involved in this controversy on its merits.
 

 If chattel mortgages were formerly, in most of the States, treated as invalid unless actual possession was surrendered to the mortgagee, it is not so now, for modern legislation has, as a general thing (the eases to the contrary being exceptional) conceded the right to the mortgagor to retain possession, if the transaction is on good consideration and
 
 bond fide.
 
 This concession is in obedience to the wants of trade, which deem it beneficial to the community that the owners of personal property should be able to make
 
 bond fide
 
 mortgages of it, to secure creditors, without any actual change of possession.
 

 But the creditor must take care in making his contract that it does not contain provisions of no advantage to him, but which benefit the debtor, and were designed to do so, and arc injurious to other creditors. The law will not sanction a proceeding of this kind. It will not allow the creditor to make use of his debt for any other purpose than his own indemnity. If he goes beyond this, and puts into the contract stipulations which have the effect to shield the property of his debtor, so that creditors are delayed in the collection of their debts, a court of equity will not lend its aid to enforce the contract. These principles are not disputed, but the courts of the country are not agreed in their application to mortgages, with somewhat analogous provisions to the one under consideration. The cases cannot be reconciled, by any process of reasoning, or on any principle of law. As the question has never before been presented to this court, we are at liberty to adopt that rule on the subject which seems to us the safest and wisest. It is not difficult to see that the mere retention and use of personal property until default is altogether a different thing from the retention of possession accompanied with a power to dispose of it for the benefit of the mortgagor alone. The former is permitted by the laws of Indiana, is consistent with the idea of security, and may be for the accommodation of the mortgagee; but the latter is inconsistent with the nature and
 
 *524
 
 character of a mortgage, is no protection to the mortgagee, and of itself furnishes a pretty effectual shield to a dishonest debtor. We are not prepared to say that a mortgage under the Indiana statute would not be sustained which allows a stock of goods to be retained by the mortgagor, and sold by him at retail for the express purpose of applying the proceeds to the payment of the mortgage debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors. But there are features en-grafted on this mortgage which are not only to the prejudice of creditors, but which show that other considerations than the security of the mortgagees, or their accommodation even, entered into the contract. Both the possession and right of disposition remain with the mortgagors. They are to deal with the property as their own, sell it at retail, and use the money thus obtained to replenish their stock. There is no covenant to account with the mortgagees, nor any recognition that the property is sold for their benefit. Instead of the mortgage being directed solely to the
 
 bond fide
 
 security of the debts then existing, and their payment at matui’ity, it is based on the idea that they may be indefinitely prolonged. As long as the bank paper could be renewed, Robinson consented to be bound, and in Mrs. Sloan’s case it was not expected that the debt would be paid at maturity, but that it would be renewed from time to time, as the parties might agree. It is very clear that the instrument was executed on the theory that the business could be carried on as formerly by the continued indorsement of Robinson, and that Mrs. Sloan was indifferent about prompt payment. The correctness of this theory is proved by the subsequent conduct of the parties, for the mortgagees remained in possession of the property, and bought and sold and traded in the manner of retail dry-goods merchants, from July 7th, 1871, to August 7th, 1878. During this period of twenty-five months Robinson indorsed as usual, and Mrs. Sloan was content with- the payment of a small portion of the principal of her debt. Instead of getting it
 
 *525
 
 renewed, as contemplated by the mortgage, she seems to have been willing to let it remain dishonored, and the fair inference from the averments of the bill is that Robinson would have continued to indorse, and Mrs. Sloan exhibit the same easy indifference on the subject of her indebtedness, if the death of Seth Coolidge had not dissolved the firm and compelled an inventory and appraisement, showing the desperate condition of the mortgagors. It hardly need be said that a mortgage which, by its very terms, authorizes the parties to accomplish such objects is, to say the least of it, constructively fraudulent.
 

 Manifestly it was executed to euable the mortgagors to continue their business and appear to the world as the absolute owners of the goods, and enjoy all the advantages resulting therefrom. It is idle to say that a resort to the record would have shown the existence of the mortgage, for men get credit by what they apparently own. and possess, and this ownership and possession had existed without interruption for teu years. There was nothing to put creditors on their guard. On the contrary, this long-continued possession and apparent ownership were well calculated to create confidence and disarm suspicion. But apart from this, security was not the leading object. If so, why does Mrs. Sloan’s note remain overdue for twenty-one months, and why does Robinson continue to indorse? This conduct is the result of trust and confidence, which, as Lord Coke tells us, are ever found to constitute the apparel and cover of fraud.
 

 In truth, the mortgage, if it can be so called, is but an expression of confidence, for there can be no real security where there is no certain lien.
 

 Whatever may have been the motive which actuated the parties to this instrument, it is manifest that the necessary result of what they did do was to allow the mortgagors, under cover of the mortgage, to sell the goods as their own, and appropriate the proceeds to their own purposes', and this, too, for an indefinite length of time. A mortgage which, in its very terms, contemplates such results, besides
 
 *526
 
 being no security to the mortgagees, operates in the most effectual manner to ward off other creditors; and where the instrument on its face shows that the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose. The views we have taken of this ease harmonize with the English common-law doctrine, and are sustained by a number of American decisions. In the American editor’s note to Twyne’s case,
 
 *
 
 most of the eases in this country on the subject are collected and elassified.
 
 †
 

 It is contended by the appellants that the rulings of the Indiana courts are in favor of the validity of this mortgage, and the main case relied on to support this position is
 
 Maple
 
 v.
 
 Burnside.
 
 The facts of this case are stated in the opinion of the court in a way to render it difficult for any practitioner outside of the State to understand the application to them of the legal rules which are discussed, but there is nothing to show that the mortgage there considered contained any provision permitting the. mortgagor to remain in possession of the property and deal with it as his own, nor does the judgment of the court involve any such question. The case would seem to be chiefly valuable as an authoritative exposition of certain points of nisi prius practice. Although we have been unable to find any case from Indiana of similar facts with the one at bar, yet the decision in the
 
 New Albany Insurance Company
 
 v.
 
 Wilcoxson,
 

 ‡
 

 would seem to imply that when such a case did arise it would be decided in accordance with the views we have presented. The point ruled in that case is, that if a mortgage is executed merely to protect property in the hands of the mortgagor from his creditors other than the mortgagee, the mortgagor retaining possession and the right of disposition, and these facts appear upon the face of the mortgage, it would be fraudulent and void as against other creditors, and should be so declared by the court. And the court, to sustain this proposition,
 
 *527
 
 refer to
 
 Freeman
 
 v.
 
 Rawson,
 

 *
 

 a standard authority in this class of cases, for the views we have advanced on this subject.
 

 Finally, it is insisted if the mortgage is held void in law, still the delivery of the goods in. pledge vests a sufficient lien,
 
 primd fade,
 
 to enable the appellants to enforce their lien in equity.
 

 The answer to this is, that the case made by the bill does not proceed upon such a delivery at all, but upon the mortgage and seizure under it. Besides, if the appellants could turn the proceeding into a voluntary pledge by the debtors, it would not help them, for it would violate the preference clause of the Bankrupt Act, as the}' got the goods only twelve days before the petition in bankruptcy was filed.
 

 Decree affirmed.
 

 *
 

 May on Fraudulent Conveyances, p. 120.
 

 †
 

 17 Wendell, 495-6.
 

 *
 

 9 Indiana, 461.
 

 *
 

 In Smith’s Leading Cases, vol. i, p. 52, 7th American edition.
 

 †
 

 See, also, Mittnacht
 
 v
 
 Kelly, 3 Keyes, 407 ; Yates
 
 v.
 
 Olmsted, 65 Barbour, 43; Barnet
 
 v.
 
 Fergus, 51 Illinois, 352; Be Manly, 2 Bond, 261 Re Kahley, 2 Bissell, 383.
 

 ‡
 

 21 Indiana, 355.
 

 *
 

 5 Ohio State, 1.