## MAISH *v.* BIRD and others.

*(Circuit Court, S. D. Iowa, ~. D. November 18, 1884.)*

1. FRAUDULENT CONVEYANCE — CHATTEL MORTGAGE — MORTGAGOR RETAINING POSSESSION, WITH POWER OF SALE.

   A chattel mortgage, executed to a creditor on a stock of goods, providing that the mortgagor may retain possession of the goods, and dispose of them in the ordinary course of trade, from time to time adding to the stock, under the Iowa statute is not void as to other creditors where it does not appear that the proceeds of sale were to be used for any other purpose than the payment of the mortgage debt.

2. SAME—BURDEN OF PROOF—EVIDENCE OF FRAUD.

   The burden is upon the party claiming such a chattel mortgage is a fraud on the creditors of the mortgagee, to establish its invalidity. This may be done, either by showing that the provisions of the mortgage are such as to prove that the parties thereto intended to commit a fraud upon the rights of others, or by showing that the acts of the parties have been such that fraud is the necessary inference. Evidence *held* not to show a fraudulent intent, and mortgage sustained.

In Equity.

*Wright, Cummins & Wright,* for complainant.

*Finkbine & McClellan,* for defendants.

SHIRAS, J. The question for determination, submitted to the court, turns upon the validity of two chattel mortgages now owned by complainant, executed in January, 1882, by W. K. Bird upon his stock of merchandise, as against the claims of certain attaching creditors. The stipulation of facts upon which the cause was submitted shows

that Bird had been engaged in business in Des Moines, Iowa, and had become indebted to the Iowa National Bank in the sum of $14,000, and that, upon the officers of the bank demanding security for this indebtedness, Bird agreed to execute a chattel mortgage upon his stock, provided the bank would loan him a further sum of $4,000. This additional sum was advanced by the bank, and a chattel mortgage to secure the entire amount due was executed under date of January 6, 1882. Upon receipt of the mortgage the bank proposed to record the same at once. But upon the representation that Bird would be able to procure from H. B. Claflin & Co., of New York, a loan of $15,000 to $20,000, wherewith to pay off the mortgage, the bank consented to withhold the mortgage from record until Bird could proceed to New York and endeavor to negotiate the loan from Claflin & Co., it being understood that Bird was to notify the bank of the result by telegraph. Bird at once went to New York and telegraphed that the negotiation was proceeding favorably. He failed, however, to secure the loan, and Claflin & Co. at once sent to Des Moines and caused the stock covered by the mortgage to be attached. Thereupon the mortgage was at once recorded, and the property replevied from the seizure under the writ of attachment. The mortgage in question having been assigned to George H. Maish, he filed a bill to foreclose the mortgage, to which proceeding the present defendants became parties, they being attaching creditors who had caused the levy of attachments on the goods after the same had been replevied by complainant.

The defendants now contest the validity of the chattel mortgage, on the ground that the same comes within the rule laid down in *Robinson* v. *Elliott*, 22 Wall. 513, and *Crooks* v. *Stuart*, 2 McCrary, 13, S. C. 7 Fed. Rep. 800. The facts in the case show that the debts due defendants were created before the execution of the mortgage to the bank, and there is nothing in the record which tends to show that these defendants were in any way misled to their injury through the failure to promptly record the mortgage. The element of estoppel is therefore not in the case. There are not found in the mortgage any express provisions authorizing the mortgagee to sell the property for his own benefit, nor do the facts show that such was the real intent and design of the parties. The reason why the mortgage was not promptly recorded is fully explained, and as against creditors who were not misled thereby, the fact that it was not recorded until the nineteenth of January, 1882, would not invalidate it. The radical difference in the facts of this case and those upon which the ruling in *Robinson* v. *Elliott* was based is clearly apparent. In the latter case the mortgagors had remained in possession for 25 months, the debt secured being overdue 21 months, and had sold the goods without accounting, or being bound to account, for the proceeds, and the terms of mortgage expressly provided for continued renewals of the notes evidencing the debt. The acts of the parties clearly dem-

onstrated the intent with which the mortgage was executed; and, construing the terms of the mortgage in the light of the acts of the parties thereto, the court held the mortgage fraudulent and void.

In the case now before the court there is nothing in the evidence which shows that the parties contemplated the idea of allowing the mortgagors to sell the goods and apply the proceeds to their own use. If Bird had succeeded in his negotiations with Claflin & Co., the mortgage would have been at once canceled. If, after learning of the failure to make the negotiation for the loan, the bank had permitted Bird to continue in business, sell the goods, and use the same for his own purposes, instead of applying the proceeds to the payment of the mortgage debt, then the facts would bring the case within the rule in *Robinson* v. *Elliott*. As soon, however, as the bank learned of the failure to make the loan, possession of the goods was taken under the mortgage. Under these circumstances the court is not permitted to indulge in speculations touching what might have been done if the facts had been different. The burden is upon the defendants of establishing the invalidity of the chattel mortgage. This may be done, either by showing that the provisions of the mortgage are such as to prove that the parties thereto intended to commit a fraud upon the rights of others, or by showing that the acts of the parties have been such that fraud is the necessary inference. Although some of the provisions of the mortgage may be open to criticism, still, taken as a whole, it does not appear therefrom that the parties intended thereby to commit a fraud upon the rights of others, and there is nothing in the evidence which shows that such was the purpose of the parties. Consequently, it must be held that the mortgage is valid in the hands of complainant. The same conclusion must follow in regard to the second mortgage executed to complainant. The decree, therefore, must be for complainant; and it is so ordered.

---

## On Rehearing.

### (December 2, 1884.)

Shiras, J. A petition for rehearing, and argument in support thereof, has been filed in above cause by Finkbine & McClellan, attorneys for certain attaching creditors. It is claimed that the court had not properly considered the terms of the mortgages under which complainant's rights arise, and that these mortgages are clearly void within the rule laid down in *Robinson* v. *Elliott*, 22 Wall. 513. In the argument for rehearing it is claimed that in the case of *Robinson* v. *Elliott* is established the proposition "that a mortgage or other conveyance of a stock of goods in trade, made to seem a *bona fide* indebtedness, if coupled with an agreement reserving to this mortgagor the potential control of the goods, with the privilege of disposing of them at discretion, in the usual course of trade, is fraudulent

and void as to other creditors; a recognized, absolute legal rule resting upon this solid pedestal of the common law." The argument of counsel is based upon the assumption that the foregoing proposition is absolutely correct, and contains an exact statement of the rule laid down in *Robinson* v. *Elliott.* Standing just as it does it omits one very essential fact, and that is, that the disposition of the goods, in the usual course of trade, is for the benefit of the mortgagor. There can be no question, that, under the statutes of Iowa, a mortgagor of personal property may retain possession of the property, if the mortgage be recorded, at least until the maturity of the debt. He can, therefore, lawfully retain "potential control of the goods." Can he sell them at retail in the usual course of trade? The supreme court, in *Robinson* v. *Elliott*, 22 Wall. 524, answer:

"We are not prepared to say that a mortgage, under the Indiana statute, would not be sustained which allows a stock of goods to be retained by the mortgagor, and sold by him at retail, for the express purpose of applying the proceeds to the payment of the mortgage debt. Indeed, it would seem that such an arrangement, if honestly carried out, would be for the mutual advantage of the mortgagee and the unpreferred creditors."

It is clear, therefore, that the mere fact that the mortgagor remains in possession, and sells the goods at retail, does not *ipso facto* determine the question of the validity or invalidity of the mortgage. The query is, does he sell them for his own benefit or for benefit of the mortgagee? Now, this query may be answered from the stipulation expressly stated in the mortgage, or from the information derived from the acts of the parties. If from either or both sources it appears that the sales are made by the mortgagor with the consent of the mortgagee, for the benefit of the former, then the case is brought within the rule announced in *Robinson* v. *Elliott.* The court, in that case, construed the mortgage and its provisions in the light cast thereon by the acts of the parties, and, it appearing that the mortgagor had for 25 months remained in possession, selling the goods, using the proceeds for his own purposes, and not applying the same to the payment of the mortgage debt, the conclusion was reached that the mortgage was void. The mortgages executed by W. K. Bird contain provisions indicating that it was expected that the business would be continued and additions be made to the stock, but upon the face of the mortgage there is no statement made which proves that it was the intent to use the proceeds of the goods for any other purpose than for the payment of the mortgage debt. The terms used in the mortgage are open to either construction, in that it is not expressly stated what disposition was to be made of the proceeds; but that does not justify the court in assuming that the parties intended to commit a fraud. There is nothing in the evidence showing that the proceeds of sales were used by the mortgagor for his benefit, with the consent of the mortgagee, either express or implied. If the evidence in this case, as in *Robinson* v. *Elliott*, proved

that Bird had been allowed to carry on the business for months, buying and selling in the usual way of trade, and using the proceeds for his own purposes, but not paying therewith the mortgage debt, then the case would be similar to *Robinson* v. *Elliott.* It lacks, however, the essential element named, and therefore the court would not be justified in declaring the mortgages void as against creditors. The petition for rehearing is overruled.