### In re WILLIAMS.

#### (District Court, W. D. Georgia, S. D.   February 11, 1903.)

1. REFEREE—OBJECTIONS TO FINDINGS.

   Where creditors seeking to overturn finding of the referee contend that certain moneys are not the proceeds of property pledged to a lienholder, the referee having found that they are, the burden of proof is on the objectors to show the fact to be as they insist.

2. NOTES—ASSIGNMENT—PRESUMPTIONS.

   Where farmers' notes were transferred by a country merchant to a cotton factor to secure advances, and it is contended that the transfer was not legal because not in writing, and the notes are not produced in evidence or accounted for, in the absence of proof to the contrary it will be presumed that such notes were made in accordance with the custom of the trade, were either payable to bearer or to order, and were duly indorsed.

3. CHATTEL MORTGAGE—FRAUD—WITHHOLDING FROM RECORD.

   There is no evidence in this case that the mortgage to the factor was fraudulently withheld from the record. In re Josephson (D. C.) 116 Fed. 404, followed.

4. SAME—LIEN.

   Where a country merchant shipped cotton to a factor holding a mortgage or other security, and contemporaneously made drafts against the proceeds of such cotton with request to the factor to pay the proceeds on other accounts, thus leaving a balance of indebtedness in favor of the factor, all done in good faith and in usual course of business, held that the mortgage or other security given as a lien must be treated as a lien protecting such balance.

5. REFEREE—REPORT—CONCLUSIVENESS.

   Report of referee on questions of fact is presumed to be correct until the contrary is shown.

(Syllabus by the Court.)

In Bankruptcy. Objections of W. A. Doody Company et al. to proof of secured claim of B. T. Adams & Co. Petition to review finding of referee.

George S. Jones, for creditors.
DuPont Guerry, for B. T. Adams & Co.

SPEER, District Judge. From the record in this case it appears that B. T. Adams & Co. are cotton factors and commission merchants in the city of Macon, Ga. J. F. Williams, the bankrupt, is a country merchant who dealt directly with the farmers. He relied upon B. T. Adams & Co. to make him advances, based principally upon the cotton crop of the current year.

It appears from the finding of the referee, and from the evidence, that on the 1st of January, 1901, the account between these parties was practically balanced. Their relations had continued for years, and Williams desired further advances for the year 1901. To obtain these he executed on February 21st to Adams & Co. two notes, each for the sum of $750, and between that date and the 14th of June, Adams & Co. made further advances to Williams, aggregating $6,750, all evidenced by notes given as the advances were made, all made payable in the fall of 1901. To secure these notes Williams made to Adams & Co. a mortgage upon his stocks of goods contained in the storehouses occupied by him in the town of Irwinton and in the town of McIntyre. All of this was more than four months anterior to the institution of bankruptcy proceedings against Williams. A verbal contract is also shown by the evidence, to the effect that, in consideration of the advances made to Williams during the summer and fall of 1901, as fast as he should receive notes and mortgages from his customers he undertook to deliver the same to Adams as collateral for further security of the large advances made him. In consideration of the mortgage and in consideration of the additional collateral afforded by the farmers' notes payable to Williams and transferred to B. T. Adams & Co., the factors made advances not only of $6,750 secured by the mortgage, but of the additional sum of $9,335.63. Williams complied with his contract to deliver the collateral in the fall of 1901, and as a result of this arrangement between the factor and their customer, after crediting the latter with the sales of cotton and moneys collected on notes and accounts, the balance showed that he was still indebted to Adams & Co. in the sum of $4,354.08. The date of the mortgage of Adams & Co. is the 14th day of June, 1901. Proceedings in bankruptcy were instituted on the 16th day of December of the same year. After the administration of the bankrupt's estate, the sum of $2,622.19 remains in the hands of the trustee, and a contest arises before the referee as to its appropriation. This sum resulted from the sale of the stocks of goods which had been mortgaged to Adams & Co. as part security for the advances made. The referee held that this sum should be appropriated so far as it would go to pay off the debt thus secured, and certain general creditors have filed numerous exceptions to that finding. The record is voluminous and confusing, but in so far as questions of fact are in dispute the referee has negatived by his finding the contentions of counsel for the objectors, and his action is now before the court for review.

With regard to the contention that the money in the hands of the trustee is not the proceeds of the property covered by the mortgage of B. T. Adams & Co., nor the proceeds of the collateral notes transferred or delivered to B. T. Adams & Co., the objectors do not appear to sustain the burden upon them to show its correctness by affirmative proof. Indeed, the mortgage expressly pledges "all dry goods, groceries, hardware, etc., which is now contained or that may be contained hereafter in the storehouses" of the mortgagor. By the law of the state such mortgages are of recognized validity. Nor does it appear that Williams was insolvent, or, if he was, that Adams & Co. were chargeable with notice of any facts which put them on inquiry as to his insolvency at the time the advances were made or the mortgage executed. On the contrary, Williams had by a long course of correct dealing established a character for solvency and reliability in which Adams & Co. might well have trusted, and it seems that his bankruptcy was more ascribable to illness on his part at a critical period of his business than to any other cause.

The contention that the transfer of the farmers' notes to Adams & Co. by Williams was not legal, because the transfer was not in writing, in view of the record is equally untenable. None of these notes are produced, and the court will not presume that they were nonnegotiable. Nor will the court presume that they would not pass on delivery before they were due, especially in view of the fact that they were transferred before the advances to secure which they were given were made. In the absence of the notes, it will be presumed that, in accordance with custom, they were either payable to bearer or to order and duly indorsed. "Omnia praesumuntur rite esse acta." The burden on this point also is on the objectors.

Nor is there any evidence to show that the mortgage taken by Adams & Co. was fraudulently withheld from the record. Repeated decisions of the Supreme Court of this state have declared that the failure to record such a mortgage does not impair its validity, and so far from being in proof that there was an agreement to withhold it from the record there is positive proof to the contrary. Indeed, there is nothing suspicious about it. The view the court has taken as to the validity of these mortgages is stated in Re Josephson (D. C.) 116 Fed. 404, and seems sustained by the decision of the Supreme Court of the United States in Etheridge v. Sperry, 139 U. S. 276, 11 Sup. Ct. 565, 35 L. Ed. 171, and the citations under this case in Rose's Notes on U. S. Reports, vol. 2, pp. 1157–8. The case of Robinson v. Elliott, 22 Wall. 513, 22 L. Ed. 758, cited by counsel for the objectors to show the invalidity of the mortgage, is apparently distinguishable from the case at bar; for in the mortgage in that case there was an express provision permitting the mortgagor to remain in possession of the property and deal with it as his own, and in that case also the creditors preferred got the goods only 12 days before the petition in bankruptcy was filed. The mortgage was there held void as to other creditors, and was as a consequence held void as to the assignee of the bankrupt mortgagor. Besides, the Indiana statute under consideration declared that no assignment of goods by way of mortgage shall be valid against any other person

than the parties thereto, when such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be duly recorded. Neither of these provisions are requisite in this state to the validity of such a mortgage. In the absence of any proof of fraud, the mortgage made more than four months anterior to the proceedings in bankruptcy, while a preference to Adams & Co., was a preference which is expressly upheld by the law of the state. In the case of Huntley v. Kingman, 152 U. S. 527, 14 Sup. Ct. 688, 38 L. Ed. 540, the Supreme Court upheld such a preference upon the ground that it was good at common law. The court also cites with approval the case of Etheridge v. Sperry, supra, and also distinguishes Robinson v. Elliott, supra. The conclusions of the court in Huntley v. Kingman, as announced by Mr. Justice Brown, are deemed conclusive as to the validity of this mortgage, considered in the light of general commercial jurisprudence. A fortiori, it is valid by the law of Georgia.

Nor does it appear, as contended, that the debt secured by the mortgage had been paid in full, as claimed by counsel for the objectors. This argument is based upon an account current furnished by the factors from their books, but the fact that a note is charged in that account which is secured by mortgage, taken with the fact that thousands of dollars were thereafter advanced on the faith of that security, cannot be held to show the payment of the note or the satisfaction of the mortgage. The notes were never surrendered by B. T. Adams & Co. to Williams, nor does it seem to have occurred to him that it was at any time proper to demand them. These notes, and the mortgage to secure the same, together with the collateral, were the security for all the advances made, and against these advances Williams continually drew drafts to pay his creditors and keep his business running.

It is also insisted that the notes and collateral are infected by usury, but under the law of Georgia this could only defeat the collection of the usurious interest, and, since the entire amount in the hands of the court is not more than sufficient to pay about 60 per cent. of the principal, it is not perceived how the alleged charge of usury, even if it were sustained, can be available to the objecting creditors. It is not contended that it affects the validity of the mortgage. If the notes to Adams & Co. were indeed usurious, or the collateral notes given to secure them were usurious, there is nothing to prevent the collection of principal and legal interest on both.

In conclusion, it seems clearly to appear from this record that the transactions presented by the evidence afford an instance of the ordinary relations between factor and customer, both dealing in entire good faith. Adams & Co. honored the drafts of Williams and his creditors in the year 1901 to an amount over $9,000, and continued to pay these drafts without exception until December 9th of that year. The proceeding in bankruptcy was filed on December 16th.

In the absence of proof to the contrary, the court will not infer, as it is asked to do, that, after the carefulness the factors had manifested in exacting this security, they had abandoned the same and made large advances without any security at all. An apparently con-

trolling case upon this subject is Hilton v. Sims & Co., 45 Ga. 565. In that case, in the spring, a planter gave his factor a note secured by mortgage on realty. This was to secure all advances made up to November 1, 1869. At that date the planter owed the factor about $1,300, and thereafter the planter consigned cotton which sold for more than that amount, but drew on the factor in favor of different persons as he forwarded the cotton. The drafts were honored in an amount large enough to absorb the proceeds of the cotton shipped, and the Supreme Court held that the note and mortgage, under the circumstances, must be treated as collateral security for the balance due the factor. It is true, then, that the drafts drawn by Williams, or for him, against the advances placed to his credit by B. T. Adams & Co., must be regarded as requests to appropriate the proceeds of all cotton shipped or other funds paid in. This would leave the original mortgage in full force and effect, and a valid special lien on the merchandise in the storehouses of the debtor.

For these reasons, and for the reason generally that the objectors have failed to show a preponderance of evidence in their favor on the several contentions of disputed fact in issue, the report of the referee, always presumed to be correct on questions of fact until the contrary is shown, is affirmed, and the exceptions are overruled.