Mr. Chief Justice Shepard
delivered the opinion of the Court:
The charge of the court in submitting the question of the intent to defraud creditors by the execution of the chattel mortgage directs the attention of the jury to every fact and circumstance from which an intent to defraud creditors can be inferred, and the only objection to it is, that it submitted the *41 question of fraud to the jury. The contention is that the instrument, by its terms, and in connection with the evidence concerning the possession and use of the stock in trade, constitutes a fraud upon creditors as matter of law; wherefore the court erred in refusing to direct a verdict for the attaching creditors. The validity of chattel mortgages upon merchandise where the mortgagors remain in possession, and sell and replenish the mortgaged stock in the ordinary course of business, has been the subject of much discussion, resulting in a conflict of decisions. The only statutory limitations upon chattel mortgages in this District is that they shall be recorded. That requirement was complied within this instance.
The contention is that it is the settled law of this jurisdiction that mortgages of the character of that in question here are void as to prior creditors as matter of law, and the following cases are cited in support of the proposition. Selling v. Kimmell, 6 D. C. 273; Smith v. Kenney, 1 Mackey, 12; Robinson v. Elliott, 22 Wall. 513, 22 L. ed. 758. In Selling v. Kimmell, decided by the general term of the District supreme court in 1868, a retail jeweler gave a chattel mortgage upon his stock of merchandise to secure a note for $2,000, payable five years after date. The conveyance was in trust to suffer and permit the mortgagor to retain possession of, use, and enjoy said goods, wares, and merchandise until default made in the payment of said note, or until one quarter’s rent of the premises containing said goods, or of other premises to which they might be removed, should become due, and remain unpaid for ninety days, or should any judgment be suffered to be recovered, and execution thereon levied on said goods; and in either of these events the trustee was to take possession, make sale, etc. A judgment was recovered against the mortgagor, and the goods were seized under execution thereon. On a trial of the right of property in the special term, the court submitted the question of fraud in the transaction to the jury, who found for the claimant. The motion for new trial came before the general term on exceptions taken to the refusal of the trial court to declare the chattel mortgage fraudulent in law. The exceptions *42 were sustained. The instrument was declared void upon two grounds: first, because of the reservation of the right of the mortgagor not only to retain possession of the goods, but to use and enjoy the same; second, because there was no description of the articles conveyed by which they could be identified.
' It was this express reservation of the right to use and enjoy the property during the five years, unless levied upon in the meantime by judgment creditors, or liable to distress for rent, that determined the judgment of the court. Mr. Justice Wylie, who delivered the opinion of the court, declared that one might ■encumber his personal property and remain in possession of it if the deed be recorded. “But,” he said, “he cannot do two things which are inconsistent one with the other. He cannot make a deed of trust which will leave him in possession, and with the same powers to manage, ‘use, and enjoy’ the property as though it were his own. If the deed of trust confer •these rights upon him, they are rights which belong only to an .absolute owner, and property so held is responsible to his creditors as though he held it absolutely; and the deed is void on its face. To constitute a valid deed of trust of personal property-to secure a debt, it must look alone to that object. If It contain provisions intended to enable the maker of it to secure the use and enjoyment of the property for himself, and ’by means thereof plainly tends to defraud, hinder, or delay ■other creditors, the deed is void, and it is the duty of the ■court to decide the.question for itself, and-not to leave it to the uncertain arbitrament of a jury.”
The foregoing was a declaration of the law then, and is ■doubtless sound to-day. But there is a marked difference between the instrument to which it was applied, and the one Involved here. The next case (Smith v. Kenney) was a suit in equity to set aside a deed of trust as a fraud upon creditors. The instrument was quite like the one under consideration, .and the question of its validity was before the court on both the law and the facts. Mr. Justice Wylie, who again delivered •the opinion of the court, said of the provision that the mortgagor should retain possession of and use the said goods and *43 ■chattels: “We think that the word ‘use’ was probably retained in the printed form of the deed, and that nothing was really intended by it, further than to allow the grantor to remain in the occupancy of the premises, and take care of and use the property, subject to the rights of the trustee, because the trustee had the power to follow the goods into anybody’s hands. And it is further provided that in case Kenney should be found removing them, the trustee has power to take immediate possession.” The instrument was declared fraudulent because the evidence showed that part of the indebtedness secured was ■fictitious, and its inclusion was for the benefit of the grantor.
In Robinson v. Elliott (arising in Indiana), the mortgage held to be fraudulent in law differed from the present one, and, as said in the later case of Etheridge v. Sperry, 139 U. S. 266-273, 35 L. ed. 171-175, 11 Sup. Ct. Rep. 565: “It was not intended by that decision to hold that a chattel mortgage was void because it provided for a retention of possession by the mortgagor, and a sale by him.” In Etheridge v. Sperry the terms of the mortgage were quite similar to the terms of this, and the evidence regarding sales by the mortgagor ^and the uses of the receipts was substantially the same. The trial court refused an instruction that the instrument was fraudulent in law, and submitted the question of fraudulent intent to the jury. This was upheld as correct. It is ■objected to the controlling effect of that decision that it was necessarily determined by the law as declared by the ■ court of last resort in the State of Iowa, wherein the case arose. It is true that it was held that the decision must follow the law as so declared, but the court expressly approved the Iowa decision as sound in principle. After giving reasons for this view, Mr. Justice Brewer, who delivered the ■opinion of the court, said: “So, if the question were open, •or a new one, unaffected by any settled law of the State, we incline to the opinion that the question is not one of law, so much as it is one of fact and good faith; and that the decision of the supreme court of Iowa rests on sound principles.” In a later case in which the general doctrine of Etheridge v. *44 Sperry was referred to with approval, it was said: “The tendency of courts in modern times has been not to hold instruments of this character to be fraudulent and void upon-their face, unless they contain provisions plainly inconsistent, with an honest purpose, or the instrument indicates with reasonable certainty that it was executed, not to secure bona fidecreditors, but to enable the debtor to continue to carry on his-business under cover of another’s name.” Huntley v. Kingman & Co. 152 U. S. 527-532, 38 L. ed. 540-542, 14 Sup. Ct. Rep. 688.
The learned trial justice was evidently governed by the-views expressed in Etheridge v. Sperry, in submitting the question of fraud to the determination of the jury.
It is to be noted that the mortgage in question covered also-the furniture and fixtures of the establishment that were kept for use, and not for sale, as well as the stock in trade. Nor does the record show what proportion of the fund claimed was realized from the sale of these, or what proportion from the-sale of merchandise.
The modern tendency, referred to above, is manifested in. the section of the Code applying to fraudulent conveyances, in the proviso: “That the question of fraudulent intent shall be-
deemed a question of fact, and not of law.” Code, sec. 1120 [31 Stat. at L. 1368, chap. 854]: By the reference to this provision of the Code, we are not to be understood as saying that the Congress could deprive the courts of the right to declare-an instrument to be fraudulent in law in every case that may come before them.
We think there was no error in refusing the. appellants’ request, and the judgment will therefore be affirmed with costs. Affirmed.