UNION BANK & TRUST CO., Appellant,

v.

George B. AZAR, as Trustee in Bankruptcy of Edward Carl Coreyale, Bankrupt, Appellee.

No. 20025.

United States Court of Appeals Fifth Circuit.

April 19, 1963.

William A. Oldacre, Montgomery, Ala., for appellant.

Albert W. Copeland, Montgomery, Ala., for appellee.

Before TUTTLE, Chief Judge, and POPE* and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, Union Bank & Trust Co., here referred to as the bank, agreed to finance the purchase of some laundry machinery and equipment for Edward Carl Coreyale, doing business as Dixie Laundry Machinery Co. Pursuant to the agreement the vendors shipped the goods under order bills of lading and sent the bills of lading to the bank attached to drafts for the price of the goods covered by the bills of lading. On arrival, the goods were taken from the carrier by a warehouse company which issued warehouse receipts covering the machinery and equipment. The warehouse receipts provided that the goods would be delivered only on the authority of the bank. At the time of the arrival and warehousing of the goods, Coreyale gave a collateral note to the bank. By this instrument the maker promised to pay the principal at the stated maturity. The printed collateral note form provided that there had been deposited and pledged as collateral security for its payment certain property therein described as "warehouse receipts." There were provisions for sale upon default.

The collateral note was not recorded. Coreyale was adjudicated a bankrupt on his voluntary petition. The Trustee in Bankruptcy sued the bank, asserting

* Of the Ninth Circuit, sitting by designation.

that because of the failure to record the security instrument the bank did not acquire a lien which was good against the Trustee. The district court upheld the Trustee's contention and entered judgment against the bank. It has appealed.

The statute of Alabama which the district court held controlling is as follows:

"Conveyances of personal property to secure debts, or to provide indemnity, are inoperative against creditors and purchasers without notice, until recorded * * *."
Title 47, § 123, Alabama Code 1940.

The district court concluded that the transaction created a mortgage, perhaps both a pledge and a mortgage. It pointed out that the statute provided for recording only, not recording or possession. It concluded that because there was no recording the security transaction was without validity against the Trustee in Bankruptcy. The possession by the bank of the goods, as represented by the warehouse receipts, is conceded. Whether the bank had something more than this possession which gave it something different from or in addition to a pledge need not, we think, be determined, although it has been urged with somewhat convincing logic that the transaction between bank and borrower was a pledge and nothing more. The recording is required to make the unrecorded security conveyance operative only as to those without notice. The bank's possession, in our opinion, provided the notice which the statute contemplated.

■■ Recording is constructive notice. So also is possession. Recording provides notice where the mortgagor retains possession. Recording is a substitute for possession and is neither needed nor required where possession is in the mortgagee. 10 Am.Jur. 770, Chattel Mortgages, § 82. Robinson v. Elliott, 89 U.S. (22 Wall.) 513, 22 L.Ed. 758; Mitchell v. Conway, 257 Ala. 648, 60 So. 2d 676; Rike v. Ryan, 147 Ala. 497, 41 So. 959; American Pig Iron Storage Warrant Co. v. German, 126 Ala. 194, 28 So. 603; Smith v. Zurcher, 9 Ala. 208; McGregor & Darling v. Hall, 3 Stew. & P. 397.

A different result would, we think, defeat the purposes of the Uniform Warehouse Receipts Act. A case substantially the same factually as the case before us is Heffron v. Bank of America National Trust & Savings Association, 9th Cir., 1940, 113 F.2d 239, 133 A.L.R. 203. The court there said:

"As a condition to the validity and effectiveness of the receipts, the act does not in terms or by implication require notice to be given of the warehousing of the commodities they represent. Nor is notice to creditors of the bailor made a prerequisite of the issuance, negotiation or transfer of receipts. The act provides (§ 25) that in the case of goods delivered to the warehouseman by the owner, and for which a negotiable receipt is issued, the goods cannot be attached or otherwise levied upon while in the possession of the warehouseman, unless the receipt be first surrendered or its negotiation enjoined.

"Of immediate significance here is § 42, [Title 2, § 550, Code of Alabama 1940] providing that 'a person to whom a receipt has been transferred but not negotiated, acquires thereby, as against the transferor, the title to the goods, subject to the terms of any agreement with the transferor.' By notifying the warehouseman of the transfer to him of a non-negotiable receipt, the holder acquires the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt. [Title 2, § 551, Code of Alabama 1940]. 'Prior to the notification of the warehouseman by the transferor or transferee of a non-negotiable receipt, the title of the transferee to the goods and the right to acquire the obligation of the warehouseman may be defeated by the levy of an attachment or execution upon the

goods by a creditor of the transferor * * *.'

"The inescapable implication of this provision is that the goods are not subject to attachment or execution by creditors of the transferor—in this case the bankrupt—after the warehouseman has had notice of the transfer. The statute does more than fix the rights of the holders of warehouse receipts; it circumscribes as well the rights of creditors. In effect it denies to creditors essential rights conferred by the bulk sales law.

"The right is unconditionally bestowed on the owner of warehoused goods to convey or pledge his title by a transfer of the warehouse receipt. And it is inadmissible to suppose that the rights of the transferee may be defeated, or the transferee held liable as in conversion, because of the non-observance of formalities of which the act makes no mention. Indeed, the general scheme of the Warehouse Receipts Act to achieve uniformity, and to effect the secure and ready use of warehouse receipts as instruments of credit, is inconsistent with the notion that the business world must look to something other than the observance of the definite and comprehensive terms of the act itself."

The Trustee in Bankruptcy distinguishes the Heffron case because the security transaction was called a pledge. Unless it be that the security device here was a mortgage as well as a pledge, and as a mortgage was invalid as to the Trustee in Bankruptcy because it was not recorded, then the sound principles of the Heffron decision are applicable. Deciding, as we do, that on the facts before us the bank had a valid lien which is prior to the claim of the Trustee in Bankruptcy, it follows that the judgment of the district court must be reversed for further proceedings to give effect to the principles here stated.

Reversed and remanded.