WRIGHT, Presiding Judge.
This case began with the filing of an action of interpleader by the payor of a note to determine which of two claimants were due to be paid the sum interpleaded.
The matter was submitted to the court for judgment upon stipulation of facts. The issue was whether priority was to be determined by the Uniform Commercial Code or by pre-UCC statute. The trial court ruled that pre-UCC law was to be applied and that claimant Dee had priority. We affirm.
The facts are: On November 23, 1960, Warrior Acres, Inc., the interpleader here, executed a note payable to Marion Weston in the amount of $9,799.92. On September 19,1966, Weston executed a note payable to Velma Blakeney in the amount of $7,800. He also transferred to Blakeney, as security for payment of his note, the note of Warri- or Acres., Blakeney placed both notes in her safety deposit box where they remained until they were passed by assignment into the possession of Billy Blakeney on November 23, 1976. There remains due on the Weston note the original principal with some interest.
On April 1, 1969, claimant Dee recovered a judgment against Marion Weston in the Circuit Court of Tuscaloosa County in the amount of $21,753.90. Judgment certificate was recorded in the probate office of Tuscaloosa County. Weston died on October 28, 1976.
Claimant Dee filed garnishment against Warrior Acres, Inc. with Weston as defendant on January 4, 1977. With knowledge that both Dee and Billy Blakeney claimed rights to the balance due on the Warrior Acres note, Warrior Acres, Inc. filed inter-pleader as an innocent stakeholder.
Title 7, § 10-101, Code of Alabama (1975) (UCC) provides “This act shall become effective at midnight on December 31, 1966. It applies to transactions entered into and events occurring after that date.”
*312 Section 10-102(2) provides:
“Transactions validly entered into before the effective date specified in section 10-101 and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this title as though such repeal or amendment had not occurred.”
We have shown that the transaction between Warrior Acres and Weston and the transaction between Weston and Velma Blakeney all occurred before the effective date of the UCC. Prior to the UCC a security interest in personal property, such as a note, given to secure a debt was not perfected as to creditors without notice, until recorded. Title 47, § 123, Code of Alabama (1940) (Recomp.1958). However, a security interest in notes under the UCC is perfected by the secured party’s taking possession of the collateral. Title 7, § 9-305, Code of Alabama (1975).
It is stipulated that the conveyance of the Warrior Acres note to Velma Blakeney as security for the debt of Weston was never recorded. However, it is the contention of claimant Blakeney that his transferor had possession of the collateral at the time the UCC became effective and repealed the pri- or law requiring recording; that such possession continued after the effective date of the UCC and was continuing at the time the judgment lien of claimant Dee came into existence. The conclusion is that at the time of the event creating the judgment lien in 1969, the UCC applied and the condition for perfecting the security interest of Blakeney in the note, possession, was then existing as to claimant Dee.
This contention, at first consideration, has seeming merit. It has some limited support in such cases as August v. Poznanski, 383 Mich. 151, 174 N.W.2d 807 (1970) and Humble Oil & Refining Co. v. Copley, 213 Va. 449, 192 S.E.2d 735 (Va. 1972). However, we find that the pre-code law applies to the transaction between Weston and Velma Blakeney wherein the Warrior Acres note was conveyed to secure a debt. Had that conveyance been recorded at that time, its security would have been perfected against the judgment lien of Dee even though that lien did not arise until three years later. Had such recording been done at that time, we would have held the security interest perfected even though the debt of Dee arose after the adoption of the UCC. The pre-code law required the doing of an affirmative act, recording, to perfect a security interest against rights of subsequent creditors. Velma Blakeney elected not to record and perfect a security interest in the Warrior Acres note at the time of the transaction with Weston, nor at any time prior to the enactment of the UCC. Her assignee may not now claim the benefit of the subsequent law which does not require any action to perfect such security interest. In re Palmer, 2 UCCR 646 (D.Ore.1964).
It is our opinion that Title 7, §§ 10 — 101 and 10 — 102(2) mean that transactions completed prior to the effective date of the UCC, and all of the rights, duties and interest flowing therefrom are to be terminated, completed, consummated and enforced as though the laws then applying had never been repealed. In re Glenwood Packing Co., 4 UCCR 884 (S.D.Iowa 1967).
The second contention of Blake-ney is that even if pre-code law applies, Dee was not entitled to judgment. The premise of that contention is that Title 47, § 123 did not require recordation of a security interest if the mortgagee took actual possession. In support of his contention, Blakeney cites the case of Union Bank & Trust Co. v. Azar, 316 F.2d 433 (5th Cir. 1963). That case at 434 does state that,
“Recording is constructive notice. So also is possession. Recording provides notice where the mortgagor retains possession. Recording is a substitute for possession and is neither needed nor required where possession is in the mortgagee.”
There is cited as authority for the quoted statement 10 Am.Jur. “Chattel Mortgages,” § 82 and several cases including some Alabama cases. Study of those cited cases does not furnish support for the statement. The *313 statement that “recording is a substitute for possession” is taken from the case of Howell v. Carden, 99 Ala. 100, 10 So. 640 (1892). The issue being discussed in that case was whether a mortgage of personal property was void for fraud as against unsecured creditors when possession of the property was left with the mortgagor. The court said that because the statute requiring recording of such mortgages was a substitute for possession, the law permitted possession to remain with the mortgagor without raising a presumption of fraud. The other eases cited in Azar involved the same issue. Rike v. Ryan, 147 Ala. 497, 41 So. 959 (1906); Lehman, Durr & Co. v. Van Winkle & Co., 92 Ala. 443, 8 So. 870 (1890).
The court said in Howell v. Carden, supra, 99 Ala. at 108, 10 So. at 644,
“The owner of personal property has the right to mortgage it to secure the payment of debts. To protect creditors and purchasers without notice, the statutes provide for the record of such conveyances. — Code 188, §§ 1806-1814. These statutory provisions impliedly recognize the right of the mortgagor to stipulate in the instrument for his retention of possession of the mortgaged property . . . ”
We consider this quotation to support our opinion that taking possession by the mortgagee is not such notice as will remove the requirement of recording. If it were otherwise, the legislature had only to say that recording was necessary only if possession was to be retained by the mortgagor. It did not do so but stated that such mortgagees were inoperative against purchasers and creditors, without notice, until recording. The statute is in derogation of the common law and requires strict construction. Pappas v. City of Eufaula, 282 Ala. 242, 210 So.2d 802 (1968).
We find no error in the judgment below.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.